**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ATIQ YUNSAI, | § | |
| *Petitioner* | § | |
| | § | |
| v. | § | Case No.  SA-26-CA-00129-XR |
| | § | |
| PAM BONDI, KRISTI NOEM, TODD M. | § | |
| LYONS, LETICIA DIAZ, | § | |
| *Respondents* | § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Atiq Yunsai's Petition for a Writ of Habeas Corpus

(ECF No. 1) and the Federal Respondents' response (ECF No. 6). After careful consideration, the

Petition (ECF No. 1) is **GRANTED**.

## BACKGROUND

Petitioner challenges the legality of his immigration-related detention. *See generally* ECF

No. 1. He is a native and citizen of Afghanistan. ECF No. 6 at 2. He was apprehended the same

day he entered the country. He has now been in government custody for over 18 months.

**I. Facts**

On September 9, 2024, Petitioner entered the United States without admission or inspection

near Eagle Pass, Texas. ECF No. 6-1 at 2. Immigration authorities detained him and charged him

as inadmissible under 8 U.S.C. § 1182 that same day. *Id.* These officers also criminally charged

Petitioner under 8 U.S.C. § 1325 for an illegal entry. *Id*. Petitioner was sentenced to time served

(119 days of confinement). *Id.*

After his prison term ended, officials transferred Petitioner to immigration detention. *Id.*

An immigration judge denied Petitioner's claims for relief and ordered his removal in June 2025.

ECF No. 6 at 2. Petitioner did not appeal the order, so it became administratively final on July 27, 2025. *Id.*

Petitioner has now been in post-removal-order detention for 246 days—roughly 8 months.

## LEGAL STANDARD

### I. Writ of Habeas Corpus

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

### II. *Pro Se* Construction

The Court notes that Petitioner proceeds *pro se* in this case. When reviewing a *pro se* pleading, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a party's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Likewise, while courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must

still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995)).

## DISCUSSION

Petitioner challenges the legality of his post-removal-order detention. ECF No. 1. Respondents argue that 8 U.S.C. § 1231 authorizes Petitioner's detention. ECF No. 6 at 1.

Section 1231 "authorizes the detention of aliens who have already been ordered removed from the country." *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018). "Under this section, when an alien is ordered removed, the Attorney General is directed to complete removal within a period of 90 days, . . . and the alien must be detained during that period." *Id.*

If the government fails to remove the alien during that period, the Government may exercise discretion to continue detaining certain aliens for as long as is "reasonably necessary" to secure their removal. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(6). But this discretion is not "unlimited." *Zadvydas*, 533 U.S. at 697. Under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized."[1] Thus, a court assessing detention *beyond* the removal period must ask "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

To aid this inquiry, the *Zadvydas* court recognized a "presumptively" reasonable period of post-removal-order detention lasting six months. *Id.* A detained person who brings a *Zadvydas* claim *before* the presumptively reasonable six-month period must prove "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* To make out a *Zadvydas*

---

[1] *Id.* at 699. The *Zadvydas* Court limited its holding to "aliens who were admitted to the United States but subsequently ordered removed." *Id.* at 682. But the Supreme Court later extended the holding to aliens who, like Petitioner, were never admitted and charged as inadmissible under 8 U.S.C. § 1182. *Clark v. Suarez Martinez*, 543 U.S. 371 (2005).

claim *after* the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Here, the Federal Respondents make two arguments that Section 1231 and *Zadvydas* permit Petitioner's detention.

**A. There Is a Good Reason to Believe Removal Is Not Reasonably Foreseeable**

First, Respondents argue that "Petitioner's claims are wholly insufficient to meet his burden of proof under *Zadvydas*," so the burden of proof has "not shift[ed] to Federal Respondents to prove that removal is likely." ECF No. 6 at 5. But the ICE officer assigned to Petitioner's case has noted that, after Petitioner was ordered removed, Afghanistan restricted the travel of Afghan nationals. ECF No. 6-1 at 2 (noting that starting in August 2025, "Afghanistan barred Afghanistan nationalists from traveling on valid or expired passports without an Afghanistan travel issued transportation letter"). Moreover, this officer's same declaration indicates that the United States currently has impediments to cooperating with Afghanistan to obtain these documents. *Id.* (noting that travel documents requests must be submitted to the U.S. Embassy in Qatar, which then forwards the requests to the Afghan Embassy in Qatar). The combination of these heightened administrative requirements and a diplomatic impediment to meeting them "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

**III. The Government Fails to Show a Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Given a good reason to believe that removal is not reasonably foreseeable, the remaining question is whether the Government has evidence to the contrary. They assert the following to support the conclusion that removal is reasonably foreseeable:

(1) "ICE is making regular efforts to obtain the necessary document from Afghanistan";

(2) "the Afghanistan embassy has not declined to issue a travel document in this case"; and

(3) "[o]nce the transportation letter is issued, there is no evidence in the record of any other issue that would prevent removal."

ECF No. 6 at 5.

This evidence alone is insufficient to meet the Government's burden of demonstrating likelihood of removal in the reasonably foreseeable future. *See Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (granting a petition based on *Zadvydas* when the Government was unable to secure travel documents from Liberia). "[T]he Government does not represent that Afghanistan is even accepting the return of Afghan nationals from the United States." *Samir v. Wolf*, 2026 U.S. Dist. LEXIS 63805, at *5 (W.D. La. Mar. 2, 2026)

"A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Rios v. Trump*, No. 25-1320 SEC P, 2026 U.S. Dist. LEXIS 62703, at *4-5 (W.D. La. Mar. 24, 2026). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Petitioner's detention is unlawful and he must be released.

**CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED.** It is **ORDERED** that:

1. Respondents shall **RELEASE** Petitioner (A221-096-986) from custody to a public place by **no later than April 2, 2026**;

2. Respondents shall **FILE** a Status Report **no later than April 3, 2026**, confirming that Petitioner has been released.

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this March 30, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE